UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

EARL FLYNN TRUSS, JR.,

    Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

    Defendants.
_____/

Case No. 1:19-cv-452

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Michigan constitution. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim. The Court will dismiss his supplemental state-law claim without prejudice.

**Discussion**

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility.

Plaintiff sues the MDOC, MDOC Director Heidi Washington, MDOC Grievance Manager Richard D. Russell, and the following LCF officials: Warden Noah Nagy; Deputy Warden Bryan Morrison; and Assistant Deputy Warden Robert Ault.

By way of background, Plaintiff was first incarcerated with the MDOC in 1986, on a conviction for larceny over $100, Mich. Comp. Laws § 750.356, for which he was sentenced to a prison term of 2 to 5 years. In 1992, Plaintiff pleaded guilty to two counts of armed robbery, Mich. Comp. Laws § 750.52, and he was sentenced to two prison terms of 8 to 20 years. In 1998, while in prison on the armed-robbery convictions, Plaintiff was convicted of being a prisoner in possession of a weapon, Mich. Comp. Laws § 800.283(4), and he was sentenced to a prison term of 4 to 10 years. Plaintiff apparently was released on parole from the armed-robbery and prisoner-in-possession sentences when he committed another armed robbery in 2009. He was sentenced on February 11, 2010, to a prison term of 15 to 40 years. Because he was on parole when he committed the 2009 offense, Plaintiff resumed serving the remainder of his 1992 and 1998 sentences, and he continues to serve time on those offenses, as well as on the 2010 sentence.

In his amended complaint (ECF No. 8), Plaintiff alleges that, in February 2019, he was assigned a full-time prison job as a porter at LCF. When he received his first pay, he realized that he was not being paid an enhanced rate based on his vocational education and certification in

custodial maintenance, to which he believed he was entitled under MDOC Policy Directive (PD) 05.02.110(CC):

> A prisoner paid in accordance with the standard pay scale and assigned to a semi-skilled or skilled position shall be paid an additional 15% beginning the first day of the assignment if s/he is assigned to a position for which s/he has completed a related career and technical education program (e.g., prisoner is assigned as a porter and has completed a custodial maintenance technology program). Prisoners assigned to a semi-skilled or skilled position on or after August 1, 2018 shall only be eligible to receive the addition 15% pay if they completed the career and technical education program on their current prefix.[1]

*Id.* (eff. Oct. 1, 2018).

Plaintiff complained to Resident Unit Manager Houz about the allegedly improper pay. Houz instructed Plaintiff to file a grievance. Plaintiff filed a grievance on March 11, 2019, in which he argued that the "prefix" limitation in PD 05.02.110(CC), which was first adopted in the version of the policy that immediately preceded the current version, did not apply to him. *See* PD 05.02.110 ¶ BB (eff. Aug. 1, 2018) (superseding PD 05.02.110 (eff. Feb. 25, 2008)). While Plaintiff admitted in his grievance that he currently is serving a period of incarceration on a "C" prefix, Plaintiff argued in his grievance that he also continued to be incarcerated on his "B" prefix offense, the prefix he had when he earned his certification in 1993. (Step-I Grievance, ECF No. 8-1, PageID.67.) Plaintiff argued that the policy should not have been applied to him and that, because he was in the pool of prisoners from which porters were drawn before the effective date of the policy, he should be paid the 15% extra.

---

[1] As used by the MDOC, a "prefix" refers to the letter attached to a prisoner's term of incarceration, which reflects the number of times a prisoner has been incarcerated with the MDOC. An "A" prefix refers to the first sentence served in a Michigan prison. Each subsequent spell of incarceration receives the next letter prefix. *See* "Michigan's Parolable Lifers: The Cost of a Broken Promise," <u>Citizens Alliance on Prisons and Public Spending Issues Brief</u>, p.2 (June 2013), https://www.safeandjustmi.org/wp-content/uploads/2014/02/The_cost_of_a_broken_process.pdf (last visited June 26, 2019); *see also* "What are prefix's??," <u>vBulletin® v3.7.4</u> (Jelsoft Enterprises Ltd. 2000-19), http://www.prisontalk.com/forums/archive/index.php/t-462288.html (last visited June 26, 2019); Jonah Aaron Seigel, "Prisoner reentry, Parole Violations, and the Persistence of the Surveillance State," p. 25 (2014) (dissertation), https://deepblue.lib.umich.edu/bitstream/handle/2027.42/110423/siegelja_1.pdf?sequence=1&isAllowed=y (last visited June 26, 2019).

Defendant Ault responded to the Step-I grievance, which was reviewed by Defendant Morrison. The response stated:

> According to the Classification Manual[,] "If a prisoner, paid in accordance with the standard pay scale, is assigned to a semi-skilled or skilled position, the s/he shall be paid an additional 15% beginning the first day of the assignment in the following circumstances only:
>
>> A. The prisoner is assigned to a position for which s/he had completed a related CTE [Career and Technical Education] [P]rogram (e.g., prisoner is assigned as a porter and has completed a Custodial Maintenance Technology Program) on his/her current prefix. CTE program completions must be verified by available documentation found in the prisoner's unit, Record Office, or School Files. Short seminars or trainings cannot be substituted for this requirement."

(Step-I Grievance Response, ECF No. 8-1, PageID.65.) The response went on to find that, because Petitioner did not receive his CMT certification while he was incarcerated on his current prefix, the certification could not be used to calculate his pay rate. In addition, the response found, Petitioner still needed to complete his CTE requirements. As a result, the grievance was denied at Step I on March 13, 2019.

Petitioner appealed to Step II. He again contended that he continues to serve time on an offense with the prefix he held at the time he earned his certification in 1993. He argued both that the policy was misapplied to his circumstances and that the policy, on its face, violated his right to equal protection. On March 28, 2019, Defendant Nagy denied the appeal on the basis of the findings and reasoning at Step I. (Step-II Grievance Response, ECF No. 8-1, PageID.70.) Petitioner filed an appeal to Step III, which was denied by Defendant Russell on April 8, 2019. (Am. Compl., ECF No. 8, PageID.56.)

In his amended complaint, Plaintiff contends that PD 05.02.110(CC) (eff. Oct. 1, 2018), on its face, violates the Equal Protection Clause of both the United States and Michigan constitutions by refusing to pay Plaintiff the additional 15% of basic pay given to other prisoners

4

with his custodial maintenance education and certification. Plaintiff also argues that Defendants misapplied the policy directive, because he also continues to serve time on his earlier prefix (during which he earned his certification), not just on his subsequent return to prison on another offense. Further, Plaintiff argues that Defendants violated the Administrative Procedures Act, 5 U.S.C. § 706(2)(A), (D). Finally, Plaintiff appears to argue that Defendants violated prison policy and that he was deprived of his property right, in violation of the Due Process Clause.

Plaintiff seeks preliminary and permanent injunctive relief, together with compensatory damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

5

'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Sovereign Immunity

Plaintiff may not maintain a §1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*,

703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under §1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses the Michigan Department of Corrections.

### IV. Administrative Procedures Act

Plaintiff contends that Defendants' actions violated the federal Administrative Procedures Act, 5 U.S.C. § 706. Plaintiff's claim is meritless. The Administrative Procedures Act applies only to agencies of the United States, not agencies of the states themselves. *See* 5 U.S.C. § 701 (defining agency as an "authority of the Government of the United States"). Because Defendants are state actors or agencies, Plaintiff fails to state a claim against Defendants under 5 U.S.C. § 706.

### V. Prison Policy

Plaintiff argues that Defendants improperly applied PD 05.02.110(CC) (eff. Oct. 1, 2018) to his situation, because, despite the fact that he also is incarcerated on a different prefix, he continues to serve sentences on the prefix he held when he completed his educational program.

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States," not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Defendants' alleged failure to comply with a state administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to

follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). As a consequence, Plaintiff's claim that Defendants' conduct violated prison policy is not actionable under § 1983.

## VI. Due Process

Plaintiff asserts that Defendants have deprived him of the additional pay owed to him for his custodial maintenance education without due process of law.

To the extent that Plaintiff alleges that Defendants deprived him of his property (his right to receive an increased pay rate) when they misapplied PD 05.02.110 ¶ CC, his due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in other part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's as-applied claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies

8

are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, the Court will dismiss Plaintiff's claim that Defendants, by misapplying PD 05.02.110 ¶ CC, deprived him of his property interest in the increased pay.

To the extent that Plaintiff argues that PD 05.02.110 ¶ CC, on its face, deprives him of his right to his property without due process, Plaintiff also fails to state a claim. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty or property interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a

constitutional right to a particular job or to any job"); *see also Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same). Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from Defendants' adoption and enforcement of PD 05.02.110 ¶ CC in October 2018.

### VII. Equal Protection

Plaintiff argues that PD 05.02.110 ¶ CC, either as written or as applied, violates his Fourteenth Amendment right to equal protection. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to prison jobs. *See Dellis*, 257 F.3d at, 511.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's equal protection claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the

10

government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff bears the burden of demonstrating that the government lacks a rational basis, and he may satisfy this burden either by negating "'every conceivable basis which might support the government action, or by demonstrating that the challenged government action was motivated by animus or ill-will.'" *Club Italia*, 570 F.3d at 298 (quoting *Warren,* 411 F.3d at 711). The State, conversely, bears no burden of proof; its legislative choice is presumptively valid and "'may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* (quoting *Trihealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 790 (6th Cir. 2005)).

To the extent that Plaintiff alleges an as-applied challenge—a challenge that the policy was wrongly applied to him—he fails to identify any similarly situated person who was treated differently. To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff does not allege that any other inmate who was convicted of a subsequent offense and returned to prison (thereby generating a new-prefix incarceration) continued to be paid the supplemental 15% for his career or technical education obtained while he

was held on an earlier prefix. In the absence of such an allegation, Plaintiff's as-applied equal protection claim fails.

To the extent that Plaintiff alleges that the policy, on its face, violates the Equal Protection Clause, his claim also fails. By its terms, the policy discriminates between prisoners who have been reincarcerated on a new prefix and prisoners who remain in prison on the same prefix as when they earned their education. Rational bases for such a rule are readily apparent.

First, the MDOC and Defendant Washington reasonably could have concluded that prisoners who further their educations and thereby improve their opportunities for rehabilitation should be rewarded with additional pay. Thus, the 15% enhancement serves as an incentive to prisoners' rehabilitation. However, where, as here, a prisoner has been returned to prison after a parole failure resulting in an additional conviction and prison sentence, Defendants could reasonably conclude that additional pay was not warranted, because the prisoner had not rehabilitated himself. Thus, the policy change is rationally related to the goals of rehabilitation.

Second, Defendants could well have adopted the rule as a simple way to ensure that a prisoner's previously earned qualification remains current. Where a prisoner has been released on parole or discharge, reoffends, and is returned to prison, some period of time will have elapsed since the prisoner has practiced the job for which he previously earned a qualification. That period may be one of months or years. During that period, or even before, qualification standards may have changed. By adopting the rule, the MDOC ensures that the prisoner continues to be qualified to hold the higher-paying position and meets any new qualification requirements. In the instant case, Petitioner received his certification in 1993, more than 20 years before he was returned to prison on his last incarceration. He also was on parole and away from his job for some period of

time. Under these circumstances, the policy change is rationally related to both ensuring the quality of prisoner job performance and promoting fiscal responsibility.

For all of these reasons, the policy distinction between prisoners who have gained a qualification during the same incarceration period on which they remain incarcerated is rationally related to several legitimate penological purposes. Accordingly, Plaintiff fails to state an equal protection claim.

### VIII. State-law Claims

Plaintiff alleges that Defendants' actions also violated the Michigan constitution and prison policy. The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under

13

28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: July 22, 2019      /s/ Paul L. Maloney
                                                                           Paul L. Maloney
                                                                           United States District Judge